IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANDREW PERRONG, individually and on behalf of all others similarly situated, | : | Civil File No. 2:21-cv-00996-JS-AYS |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **FIRST AMENDED COMPLAINT – CLASS ACTION** |
| | : | |
| | : | |
| CHARLES BARATTA LLC, a New York limited liability company, SLATER SLATER SCHULMAN LLP, a New York limited liability partnership, and ARKADY FREKHTMAN ATTORNEY AT LAW, P.C. d/b/a FREKHTMAN & ASSOCIATES, a New York professional corporation, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | | |

**Preliminary Statement**

1.      As the Supreme Court explained at the end of its term last year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.      The Plaintiff Andrew Perrong alleges that, on behalf of Slater Slater Schulman LLP ("Slater") and Arkaday Frekhtman Attorney at Law, PC d/b/a Frekhtman & Associates

("Frekhtman"), Charles Baratta LLC d/b/a Prime Marketing Source ("Prime Marketing") made unsolicited calls using a prerecorded voice to Mr. Perrong and others without their prior express consent.

3.     Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.     A class action is the best means of obtaining redress for the Prime Marketing's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5.     Plaintiff Andrew Perrong is an individual residing in Pennsylvania.

6.     Defendant Charles Baratta LLC is a New York company with a principal place of business in this District.

7.     Defendant Slater Slater Schulman LLP is a New York partnership with a principal place of business in Pennsylvania.

8.     Defendant Arkaday Frekhtman Attorney at Law, PC d/b/a Frekhtman & Associates is a New York professional corporation with its principal place of business in this District.

### Jurisdiction & Venue

9.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

2

10.     The Court has personal jurisdiction over Defendants because they are all incorporated in New York and/or are headquartered in this District, and because the wrongful communications giving rise to this action were directed on behalf of Slater and Frekhtman by Prime Marketing from this District.

11.     Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendants reside in this District.

**TCPA Background**

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA prohibits prerecorded telemarketing calls to cellular telephones and numbers for which the called party is charged for the call</u>

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls

3

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 ¶ 165 (2003).

17.     In 2012, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd 1830, 1844 (2012) (footnotes omitted).

### Factual Allegations

18.     Slater and Frekhtman are personally injury law firms.

19.     Prime Marketing is a marketing company that generates leads for Defendants Slater and Frekhtman.

20.     To generate leads, Prime Marketing makes prerecorded calls to consumers who have never had a relationship with Prime Marketing, Slater, or Frekhtman, and who have never consented to receive their calls.

21.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22.     Plaintiff's telephone number (Number), (215)-725-XXXX, is registered to a service for which the called party is charged for the call.

23.     Plaintiff received Prime Marketing's prerecorded call on the Number.

24.     That Number, which is assigned to a VoIP telephone service, is charged for each call it receives.

25.     The service charges a ring charge of $0.005 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

26.     The service also charges a per-minute charge of $0.004 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

27.     The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any call placed to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

28.     On January 30, 2021, the Plaintiff received a prerecorded call from the caller ID 814-631-5055 soliciting clients for personal injury lawsuits arising from Johnson & Johnson talcum powder use.

5

29.     At the end of the prerecorded message, the Plaintiff followed the instructions in the recording, and pressed "1" to be transferred.

30.     The Plaintiff was transferred to a voicemail box and left his contact information.

31.     Within minutes, Plaintiff received a return call from Prime Marketing, who sent him an email with a retainer agreement from the email "intake@primemarketingsource.com", confirming their identity.

32.     The retainer agreement was to retain Slater and Frekhtman.

33.     Other consumers have complained about receiving the identical prerecorded solicitations from Defendants, and have identified Prime Marketing as a "Robocaller" on NomoRobo.com, which was developed in response to the Federal Communications Commission Robocall Challenge. *(814) 631-5055 is a Robocaller*, NOMOROBO (Jan. 30, 2021), https://nomorobo.com/lookup/814-631-5055.

34.     Defendants' calls were not necessitated by an emergency.

35.     Plaintiff's privacy has been violated by the above-described telemarketing robocall from, or on behalf of, Defendants. The call was an annoying, harassing, nuisance. The Plaintiff was also charged for the call.

36.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

**Slater and Frekhtman's Liability for Prime Marketing's Conduct**

37.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

38.     In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

39.     In fact, the Federal Communication Commission has instructed that sellers such as Safe Streets may not avoid liability by outsourcing telemarketing to third parties, such as Simple Home:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

40.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

7

liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

41.   Slater and Frekhtman are liable for Prime Marketing's conduct because they control the manner and means of its telemarketing methods by:

a)   acquiescing to their business mode of using a call center;

b)   advising them that they could use third parties to assist in the telemarketing;

c)   instructing them on the geographic regions they can make calls into;

d)   providing qualifications for potential clients to be sent to Slater and Frekhtman; and

e)   allowing Prime Marketing to engage clients using Slater and Frekhtman's joint retainer agreement.

42.   Slater and Frekhtman knew (or reasonably should have known) that Prime Marketing was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

43.   Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

44.   Indeed, Prime Marketing has previously been sued for telemarketing on behalf of personal injury attorneys.

---

[1]   *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

45.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

46.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of Class of all other persons or entities similarly situated throughout the United States.

47.     The Class of persons Plaintiff proposes to represent is tentatively defined as:

Plaintiff Perrong and all persons within the United States: (1) to whose cellular telephone number or number for which they were charged for the call, Prime Marketing, or a third party on their behalf, placed a telemarketing call (2) within the four years prior to the filing of the Complaint (3) using an artificial or prerecorded voice (4) on behalf of Slater and Frekhtman.

48.     Excluded from the Class is counsel, the Defendants, and any entities in which either Defendant has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

49.     The Class as defined above are identifiable through phone records, phone number databases, and business records of Defendants.

50.     Based on the *en masse* nature of telemarketing, the potential members of the Class likely number at least in the thousands.

51.     Individual joinder of these persons is impracticable.

52.     The Plaintiff is a member of the Class.

53.     There are questions of law and fact common to Plaintiff and to the proposed

Class, including but not limited to the following:

> (a)  whether Defendants used an artificial or prerecorded voice to make calls to the
>       members of the Class;
>
> (b)  whether Defendants made calls to Plaintiff and members of the Class without
>       first obtaining prior express written consent to make the calls; and
>
> (c)  whether members of the Class are entitled to treble damages based on the
>       willfulness of Defendants' conduct.

54.     Plaintiff's claims are typical of the claims of members of the Class.

55.     Plaintiff is an adequate representative of the Class because his interests do not

conflict with the interests of the Class, he will fairly and adequately protect the interests of the

Class, and he is represented by counsel skilled and experienced in class actions, including TCPA

class actions.

56.     Common questions of law and fact predominate over questions affecting only

individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendants and/or their

agents.

57.     The likelihood that individual members of the class will prosecute separate

actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b))**

58.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

59.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial or prerecorded voice to Plaintiff and Class members' telephones.

60.     The Defendants' violations were negligent, willful, or knowing.

61.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call sent.

62.     Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending artificial or prerecorded voice calls, except for emergency purposes, to any cellular telephone number or number for which the called party is charged for the calls in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

11

D.      A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending artificial or prerecorded calls, except for emergency purposes, to any cellular telephone number or number for which the called party is charged for the calls in the future.

F.      An award to Plaintiff and the Class of damages, as allowed by law; and

G.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

*/s/ Avi R. Kaufman*
KAUFMAN PA
Avi R. Kaufman
400 Northwest 26th Street
Miami, Florida 33127
305-469-5881
avi@kaufmanpa.com

PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com
*Attorneys for Plaintiff and proposed class*